IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

THE HILB GROUP OF
NEW ENGLAND, LLC,
         Plaintiff,

v.                                          Civil Action No. 3:21cv757

SUSAN LEPAGE,
         Defendant.

## OPINION

Susan LePage, a former employee of The Hilb Group of New England, LLC ("THG-NE"), signed an employment agreement with THG-NE that became effective on March 15, 2019. The agreement—titled Confidentiality and Non-Solicitation Agreement (the "Agreement")—included a forum selection clause, granting exclusive jurisdiction of any disputes arising from the Agreement to "the courts of the Commonwealth of Virginia located in the City of Richmond and of the United States District Court for the Eastern District of Virginia, Richmond Division" ("this District"). (ECF No. 1-1 ¶ 15.) On October 29, 2019, LePage resigned from THG-NE.

In December 2021, THG-NE filed this lawsuit against LePage. THG-NE accuses LePage of gathering information about THG-NE clients before her resignation and using this information after her resignation to offer THG-NE clients competing insurance services. LePage moves to dismiss THG-NE's complaint on two grounds. First, she argues that because the Agreement's forum selection clause is unenforceable, venue is improper in this District. Alternatively, LePage asks this Court to dismiss THG-NE's complaint under the doctrine of *forum non conveniens*.

The Court will deny LePage's motion. The Court finds the Agreement's forum selection clause enforceable and, thus, venue proper in this District. The Court also declines to dismiss

THG-NE's complaint under the doctrine of *forum non conveniens* because LePage does not show that the public interest overwhelmingly favors dismissal.

## I. BACKGROUND

For more than twenty years, LePage has worked as an insurance account executive in Massachusetts, where she resides. LePage worked for Marsh-Kemp Insurance Agency, Inc., ("Marsh-Kemp") until THG-NE purchased Marsh-Kemp in March 2019. At that time, LePage became an employee of THG-NE, a subsidiary of The Hilb Group, LLC ("THG"). THG-NE maintains its principal place of business in Cranston, Rhode Island, while THG maintains its principal place of business in Richmond, Virginia.

"As [a] condition of her employment with THG-NE, LePage executed the Agreement." (ECF No. 1 ¶ 20; *see* ECF No. 1-1.) The Agreement includes a paragraph titled "No Solicitation of Customers." (ECF No. 1-1 ¶ 5.) This paragraph bars an employee—during her employment "and for a period of two (2) years immediately following" her employment—from "directly or indirectly . . . hav[ing] contact with, solicit[ing], or assist[ing] in the solicitation of any of the Company's Customers . . . for the purpose of selling or providing any Competitive Products or Services." (*Id.*) Further, the Agreement provides that "[u]pon the cessation of Employee's employment with the Company, or upon the Company's request, Employee shall deliver to the Company any and all Company property, including . . . documents, together with all copies thereof." (*Id.* ¶ 4(G).)

"On October 29, 2021, LePage resigned from THG-NE." (ECF No. 1 ¶ 43.) Nine days before her resignation, LePage's personal email account received "a spreadsheet entitled 'Sues Book of Biz 10-6-21.xlsx,' a client contact list of nearly 100 THG-NE customers or prospective customers." (*Id.* ¶ 44.) This spreadsheet "contained information about each customer's insurance

purchases, including the total revenue, total amount billed to each customer, the number of policies owned by each customer, and their premium amounts"—highly sensitive and valuable information. (*Id.* ¶¶ 45, 46.)

"Immediately after leaving THG-NE, LePage began selling competing insurance products." (*Id.* ¶ 49.) In response, on November 19, 2021, THG-NE sent LePage a letter regarding "[r]estrictive [c]ovenant [o]bligations" arising from the Agreement. (ECF No. 1-2.) In the letter, THG-NE demanded that LePage come into compliance with the Agreement by November 29, 2021. "LePage did not respond to the substantive demands in THG-NE's letter." (ECF No. 1 ¶ 55.) She "kept and continued to possess the THG-NE documents she stole leading up to her resignation." (*Id.*)

On December 7, 2021, THG-NE filed this lawsuit against LePage. The action alleges breach of contract, misappropriation, breach of fiduciary duty, and conversion. LePage moves to dismiss THG-NE's lawsuit for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) or on *forum non conveniens* grounds. THG-NE opposes LePage's motion, citing the Agreement's forum selection clause. The forum selection clause provides that

> the Company and Employee hereby consent to the exclusive jurisdiction of the courts of the Commonwealth of Virginia located in the City of Richmond and of the United States District Court for the Eastern District of Virginia, Richmond Division . . . in connection with any action, suit, or other proceeding in connection with, arising out of, or relating to this Agreement, and agree not to assert in any such action, suit, or proceeding that it, he or she, is not personally subject to the jurisdiction of such courts, that the action, suit, or proceeding is brought in an inconvenient forum, or that venue of the action, suit, or proceeding is improper.

(ECF No. 1-1 ¶ 15.)[1]

---

[1] The Agreement also contains a choice of law provision which provides: "This Agreement shall be interpreted and enforced in accordance with the laws of the State of Massachusetts without regard to any conflicts of law provisions or principles thereof to the contrary." (*Id.* ¶ 1.)

3

## II. DISCUSSION

LePage moves to dismiss THG-NE's complaint pursuant to Federal Rule of Civil Procedure 12(b)(3). Specifically, LePage argues that, because the Agreement's forum selection clause is unenforceable, venue is improper in this District. *See* 28 U.S.C. § 1391(b) (explaining where venue is proper). In the alternative, LePage asks the Court to dismiss THG-NE's complaint "pursuant to the common-law doctrine of *forum non conveniens.*" *BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 470 (4th Cir. 2018).

### A. *Enforceability of the Agreement's Forum Selection Clause*

#### *1. Legal Standard*

Supreme Court precedent provides that "courts enforce forum selection clauses unless it would be unreasonable to do so." *Id.* (quoting *M/S Bremen v. Zapata Off-Shore Co.* (*The Bremen*), 407 U.S. 1, 15 (1972)).[2] "This presumption of enforceability, however, only applies if the forum selection clause is mandatory rather than permissive." *Id.* A mandatory clause does not just permit litigation to occur in a particular forum, it *requires* litigation to occur in a particular forum. *Id.* But a court may decline to enforce an unreasonable clause.

> [A] forum selection clause may be found unreasonable if: "(1) [its] formation was induced by fraud or over-reaching; (2) the complaining party 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) [its] enforcement would contravene a strong public policy of the forum state."

---

[2] "[A] federal court . . . must apply federal law" when assessing the validity of a forum selection clause. *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010); *Melo v. Zumper, Inc.*, 439 F. Supp. 683, 700 (E.D. Va. 2020); *see also Martinez v. Bloomberg LP*, 740 F.3d 211, 220 (2d Cir. 2014) ("To ensure that federal courts account for both the important interests served by forum selection clauses and the strong public policies that might require federal courts to override such clauses, therefore, federal law must govern their enforceability."). This rule applies with equal force when the contract contains both a forum selection clause and a choice of law provision. *See Albemarle Corp.*, 628 F.3d at 649 ("We analyze this contract as one that contains both a choice of law clause and a forum selection clause.").

4

*Albemarle Corp.*, 628 F.3d at 651 (second and third alterations in original) (quoting *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996)).

### 2. *Application*

Because the Agreement's forum selection clause requires that litigation arising from the Agreement occur in this District, it is mandatory, not permissive. The Court, therefore, presumes its enforceability unless LePage shows that enforcement would be unreasonable. LePage argues that the forum selection clause is unreasonable for three reasons: it is a contract of adhesion; litigating in this District will effectively deprive her of her day in court; and enforcement of the clause would contravene Massachusetts's strong public policy.

First, LePage contends that the Agreement is unreasonable as a contract of adhesion. *Lechmere Tire & Sales Co. v. Burwick*, 360 Mass. 718, 720 n.1, 277 N.E.2d 503, 505 n.1 (1972) (defining a contract of adhesion as one in which "the person executing [the contract] has no choice as to its content other than to accept or reject the contract in its entirety").[3] "[C]ontracts [of

---

[3] When analyzing LePage's adhesion argument, LePage herself looks to Massachusetts courts for guidance, (ECF No. 21, at 3), while THG-NE applies case law from this District, (ECF No. 22, at 9). Neither party explains its choice. Although this Court finds that federal law governs the validity of a forum selection, *see supra* note 2, state law governs the specific contract principles that LePage's adhesion argument raises. For the reasons set forth below, this Court applies Massachusetts law to LePage's adhesion argument.

The right to avoid the enforcement of a contract of adhesion is a substantive right, not a procedural one, and federal courts apply state law when considering parties' substantive rights. *Cf. Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011) (explaining that *Erie Railroad Co. v. Thompkins*, 304 U.S. 64 (1938) "mandates that federal courts apply the substantive laws of the states when exercising . . . supplemental jurisdiction"). To determine which state's laws to apply, "federal courts apply the choice-of-law rules of the jurisdiction in which they sit." *McFarland v. Va. Ret. Servs. of Chesterfield, L.L.C.*, 477 F. Supp. 2d 727, 732 (E.D. Va. 2007). Thus, this Court looks to Virginia's choice-of-law rules. In Virginia, "[i]t is a general rule that every contract as to its validity, nature, interpretation and effect . . . is governed by the law of the place where it is made, unless it is to be performed in another place . . . ." *Erie Ins. Exch. v. Shapiro*, 248 Va. 638, 640, 450 S.E.2d 144, 145 (1994) (quoting *The Freeman's Bank v. Ruckman*, 57 Va. 126, 127 (16 Gratt. 126) (1860)). Further, "Virginia law

adhesion] are enforceable unless they are unconscionable, offend public policy, or are shown to be unfair in the particular circumstances." *McInnes v. LPL Fin., LLC*, 466 Mass. 256, 266, 994 N.E.2d 790, 798 (2013) (alterations in original). Here, although the Agreement's forum selection clause compels LePage to defend herself in this District, far from her home, she chose to sign the Agreement instead of seeking a new position in the insurance industry. By signing the Agreement, LePage elected to remain employed by THG-NE, a subsidiary of THG, which maintains its principal place of business in Richmond, Virginia. Thus, even assuming that the Agreement is a contract of adhesion, the Court may enforce the Agreement—including the forum selection clause it contains—as it is not unconscionable or unfair in these circumstances, nor does it offend public policy.

Next, LePage argues that the forum selection clause is unreasonable because litigating in this District will cause such grave inconvenience that she will be deprived of her day in court. In support of this position, LePage points to the distance between Massachusetts and Virginia and explains that she has never traveled to Virginia and litigating here "would be greatly expensive and inconvenient for her." (ECF No. 21, at 8.) But the Court must presume that the parties contemplated "the economic hardship or geographical inconvenience" of the forum named in the forum selection clause when they agreed to it. *Leasecomm Corp. v. Crawford*, 2003 Mass. App.

---

looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999).

Because LePage performed all the duties of her employment with THG-NE in Massachusetts, Virginia's choice-of-law rules require this Court to apply Massachusetts law to LePage's adhesion argument. The Court need not decide whether it reaches this conclusion because of Virginia's choice-of-law principles or the Agreement's choice-of-law clause as both compel this Court to apply Massachusetts law.

Finally, the Court notes that it confines this choice-of-law analysis to this discrete issue in the instant motion.

6

Div. 58, 2003 WL 1826537, at *3 (Mass. Dist. Ct. Apr. 4, 2003). Neither the economic hardship nor geographical inconvenience renders the clause unreasonable.

Finally, LePage says that enforcing the forum selection clause will go against Massachusetts's strong public policy interest as manifested in the Massachusetts Noncompetition Agreement Act ("MNCA"), enacted in 2018.[4] The MNCA "sets out requirements for an employee noncompetition agreement to be valid and enforceable." *Automile Holdings, LLC v. McGovern*, 483 Mass. 797, 807 n.15, 136 N.E.3d 1207, 1217 n.15 (2020). Actions "that come within the scope of the MNCA must be brought in the county where the employee resides." (ECF No. 21, at 4.); *see* Mass. Gen. Laws c. 149, § 24L(f). LePage contends that the enactment of the MNCA evinces Massachusetts's strong public policy interest in regulating noncompetition agreements like the one at issue here. This Court disagrees.

In *Albemarle Corporation*, a party sought to avoid the forum selection clause to which they had agreed by citing a South Carolina statute that "ma[de] all forum selection clauses permissive." 628 F.3d at 652. The party argued that this South Carolina statute demonstrated the state's strong public policy against forum selection clauses. The Fourth Circuit rejected these public policy arguments for four reasons. First, "insofar as the South Carolina statute would purport to impose South Carolina procedural rules on a federal court, it would be preempted by federal law." *Id.* Second, any reluctance by South Carolina "to recognize and enforce forum selection clauses was specifically addressed and countered by the Supreme Court's holding in *The Bremen*"—which established that "in federal court, forum selection clauses enjoy a presumption of enforceability."

---

[4] "The MNCA applies to an agreement between an employer 'under which the employee . . . agrees that he or she will not engage in certain specified activities competitive with his or her employer after the employment relationship has ended.'" (ECF No. 21, at 4 (quoting Mass. Gen. Laws c. 149, § 24L(a)).)

7

*Id.* Third, the Fourth Circuit found no South Carolina court holding that its statute "manifests a strong public policy" of the state. *Id.* And finally, "[c]lassifying South Carolina's statute as manifesting a strong public policy . . . would allow the very 'provincial attitude' rejected by *The Bremen* to override the federal policy of favoring a contractual choice of forum." *Id.* The Fourth Circuit, therefore, found that enforcement of the forum selection clause would not contravene a strong public policy of South Carolina.

This Court rejects LePage's public policy arguments for the same reasons. First, federal law preempts Massachusetts's procedural rules. Second, as the Supreme Court explained in *The Bremen*, any disfavor Massachusetts harbors towards forum selection clauses—as manifested in the MNCA—does not weaken the presumption of enforceability that forum selection clauses enjoy in federal court. Indeed, to allow the MNCA to trump the parties' contractual choice of forum would allow provincial attitudes to dominate. Finally, no Massachusetts court has held that the MNCA manifests the state's strong public policy. Thus, the enforcement of the Agreement's forum selection clause would not go against a strong public policy of Massachusetts.[5]

\* \* \*

Because LePage does not show that enforcement of the forum selection clause would be unreasonable, her argument—that this Court should dismiss THG-NE's complaint due to improper venue—fails. *See* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1352 (3d ed. 2021) ("Forum-selection clauses cannot make venue 'wrong' or 'improper' within the meaning of 28 U.S.C.A. § 1406(a) or Rule 12(b)(3).").

---

[5] The parties dispute whether the MNCA applies to the Agreement in this case. Because the Court finds the Agreement's forum selection clause enforceable despite the MNCA, it need not decide whether the MNCA applies to the Agreement.

### B. Forum Non Conveniens

#### 1. *Legal Standard*

The doctrine of *forum non conveniens* "allows a court to dismiss a case when the original venue is highly inconvenient and an adequate alternative venue exists." *BAE Sys.*, 884 F.3d at 470–71.[6] In a case without a valid forum selection clause, a defendant arguing in favor of transfer pursuant to *forum non conveniens* "must prove that an alternative forum is available, adequate, and more convenient (in light of the public and private interests involved) than the forum selected by the plaintiff." *Id.* at 471. In a case governed by a valid forum selection clause, however, the governing analysis changes, *id.*; in such cases, courts should *only* "consider . . . public-interest factors"—not "the parties' private interests," *Atlantic Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 64 (2013).

> The public factors. . . include[] the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981).

---

[6] The Court, again, applies its own procedural law when reviewing LePage's motion to dismiss based on *forum non conveniens*. *See Am. Dredging Co. v. Miller*, 510 U.S. 443, 454 n.4 (1994) ("[F]orum non conveniens* is not a substantive right of the parties, but a procedural rule of the forum . . . ."); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 418 (2010) (Stevens, J., concurring) ("[F]ederal courts are to apply state 'substantive' law and federal 'procedural' law" . . . .); *see also Oxford Glob. Res., LLC v. Hernandez*, 480 Mass. 462, 465, 106 N.E.3d 556, 563 (2018) ("Because the doctrine of 'forum non conveniens is not a substantive right of the parties, but a procedural rule of the forum,' [*Am. Dredging Co*, 510 U.S. at 454 n.4], a Massachusetts forum must apply its own procedural law when reviewing a motion to dismiss on the ground of forum non conveniens, even if it would have applied the substantive law of California to adjudicate the merits of the case.").

A party asking a court to transfer a case to a foreign venue despite a forum selection clause "must bear the burden of showing that public-interest factors overwhelmingly []favor a transfer." *Atlantic Marine Const. Co.*, 571 U.S. at 67. "In all but the most unusual cases, [however], 'the interest of justice' is served by holding parties to their bargain." *Id.* at 66. "The forum selection clause is 'given controlling weight in all but the most exceptional cases' . . . ." *BAE Sys.*, 884 F.3d at 471 (quoting *Atlantic Marine Const. Co.*, 571 U.S. at 63).

### 2. *Application*

THG-NE does not address the public interest factors in its brief. LePage, however, contends that the public interest factors weigh strongly in favor of transfer to Massachusetts. She explains that "all of the expected witnesses are from Massachusetts," and "her purported wrongdoing occurred" there too. (ECF No. 23, at 9.) Further, because Massachusetts law governs this dispute pursuant to the Agreement's choice of law provision, "[i]t . . . makes sense to have the trial in Massachusetts," "the home of the applicable law." (*Id.* at 10.) Finally, this case will burden Virginia citizens with jury duty despite Virginia having no relation to the litigation.

LaPage "has failed to meet [her] burden to show that this is the 'unusual case' in which the forum-selection clause should not control." *D&S Consulting, Inc. v. Kingdom of Saudi Arabia*, 322 F. Supp. 3d 45, 52 (D.D.C. 2018); *see, e.g., Anthony Allega Cement Contractor, Inc. v. Johnson Controls Fed. Sys./Versar, LLC*, No. 18-875, 2019 WL 1792201, at *11 (D. Del. Apr. 24, 2019) (denying a motion to transfer to the forum designated in a valid forum-selection clause because the clause did not bind all parties, and transferring some claims but not others would undermine judicial economy). Because the public interest factors that LePage discusses do not overwhelmingly favor dismissal, the Court will deny LePage's motion to dismiss under the doctrine of *forum non conveniens*.

## III. CONCLUSION

Finding the forum selection clause enforceable and the public interest factors not overwhelmingly in favor of dismissal, the Court will deny LePage's motion to dismiss. (ECF No. 13).

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Order to all counsel of record.

Date: 16 May 2022
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge